**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

In re:

Leslie J. Naranjo,                                          Case No. 17-34055-KLP
                                                            Chapter 7
        Debtor.

**MEMORANDUM OPINION**

Roy M. Terry Jr., the trustee in this chapter 7 case (the "Trustee"), has objected to the claim of the debtor, Leslie J. Naranjo (the "Debtor"), that certain life insurance proceeds she received postpetition are exempt and should be excluded from her bankruptcy estate. The Debtor bases her claim on Va. Code Ann. § 38.2-3122(B), which protects any "protected insurance item"[1] from the claims of creditors of "any . . . person dependent on . . . the insured or owner of the . . . policy." Va. Code Ann. § 38.2-3122(B)(2). In his objection (the "Objection"), the Trustee argues that the Debtor's interest in the proceeds at issue is not covered by § 38.2-3122(B) because the Debtor was not "dependent on" the insured.[2]

The Court held a hearing on the Objection on March 21, 2018. At the conclusion of the hearing, the Court directed counsel to submit additional

---

[1] The parties do not dispute that the insurance proceeds at issue constitute "protected insurance items" as defined in Va. Code Ann. § 38.2-3122(A).

[2] Va. Code Ann. § 38.2-3122(B) also affords protection from creditor claims to a "dependent child" of the insured. Although the Debtor is a child of the decedent, she is not a minor and has not argued that she is entitled to claim the exemption in her capacity as a "dependent child." Having found that the Debtor is entitled to claim the exemption as a "person dependent on," the Court need not address whether the Debtor qualifies as a "dependent child" under the statute.

memoranda on the question of whether the Debtor should be considered a "person dependent on . . . the insured" within the meaning of the § 38.2-3122(B).  Having considered the evidence and the oral and written argument of counsel, the Court will overrule the Objection.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered by the U.S. District Court for the Eastern District of Virginia on August 15, 1984.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## Findings of Fact[3]

In June of 2016, the Debtor's parents moved to an assisted living facility.  In December of 2016, the Debtor's mother passed away.  Thereafter, the Debtor's father expressed a desire to move out of the assisted living facility.  Because he was incapable of living on his own, he asked the Debtor if he could live with her, but the rental house in which the Debtor was living at the time was not large enough.  The Debtor and her father therefore rented a different house, with each signing the lease.  In July of 2017, the Debtor's father left the assisted living facility and moved into the rental home with the Debtor.  The Debtor agreed to be her father's fulltime caregiver in exchange for compensation of $1,500 per month plus payment of the Debtor's half of the rent and utilities.

---

[3] These findings include facts gathered at the hearing on March 21, 2018, as well as facts stipulated to by the parties prior thereto. [Dkt. 40].

2

From each of the two paychecks the Debtor received from her father, taxes, Medicaid, and social security were deducted. While she was living with her father, the Debtor kept her expenses separate from those of her father. The Debtor was not claimed as a dependent on her father's tax return. Her father did not include the Debtor in the will he executed July 16, 2017, instead leaving one-fourth of his estate to each of the Debtor's three siblings and one-eighth of his estate to each of the Debtor's two children. He followed this same distribution allocation with respect to his Individual Retirement Account with Wells Fargo Advisors, a decision documented in an "IRA Change of Beneficiary and Indemnification" form executed on August 8, 2017.

The Debtor's father passed away on August 16, 2017, four days after the Debtor filed for a petition for relief under chapter 7 of the Bankruptcy Code. The Debtor was a beneficiary under two life insurance policies insuring the life of her father, receiving a total of $15,261.58 (the "Life Insurance Proceeds").

On November 29, 2017, the Debtor filed amended schedules in which she claimed an exemption in the Life Insurance Proceeds. The Trustee has objected to the exemption.[4]

---

[4.] The Trustee originally filed an objection on November 22, 2017, anticipating that the Debtor might claim an exemption in proceeds from her father's life insurance, since the Debtor had disclosed at the meeting of creditors held pursuant to 11 U.S.C. § 341 that she was a beneficiary of life insurance policies insuring the life of her father. Subsequent to the Debtor's filing amended schedules in which she claimed an exemption in the Life Insurance Proceeds, the Trustee filed a second objection to the exemption. For clarity, the term "the

3

The Debtor's financial status during 2016 and 2017, the relevant time period, was as follows. During 2016, the Debtor had two part-time jobs. One of the Debtor's jobs ended in November of 2016, and the other job ended in February of 2017. The Debtor's 2016 tax return shows an adjusted gross income of $18,105, which includes earned income of $10,771 and unemployment benefits of $7,560. In addition, the Debtor's father gave her cash gifts of $13,000 in 2016 and $13,000 in 2017, and he had contributed to her financially since her divorce in 2009. The Debtor testified that the $13,000 gift amount had been chosen for tax purposes. She was unemployed between March and July 2017 and was receiving unemployment benefits. She served as her father's caretaker in July and August of 2017. At the time she filed this chapter 7 case, the Debtor's father was paying the majority of her expenses.

After her father's death in August of 2017, the Debtor was unable to obtain employment. During that time, her father's estate continued to pay the Debtor's share of the monthly rent because, according to the Debtor, her father had guaranteed her share. In November of 2017, the Debtor accepted a job with the AARP Foundation for which she received minimal compensation; her gross income was $486 in 2017.

---

Objection" as used in this opinion covers both the first and second objections filed by the Trustee.

4

## Discussion

The commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). However, a debtor may claim certain estate property as exempt from the estate. 11 U.S.C. § 522(b). If a state chooses to opt out of the federal exemption scheme detailed in 11 U.S.C. § 522(d), "any property that is exempt under . . . State or local law" is excluded from the estate. 11 U.S.C. § 522(b)(3)(A). Because Virginia has opted out of the federal exemption scheme, *see* Va. Code Ann. § 34–3.1, the Debtor claimed her exemptions in compliance with Virginia law, thus raising the issue of the effect of Va. Code Ann. § 38.2-3122(B). *See Mayer v. Nguyen (In re Nguyen)*, 211 F.3d 105, 107 (4th Cir. 2000); *In re Bowman*, 582 B.R. 899, 901 n.1 (Bankr. E.D. Va. 2018).

The Bankruptcy Code provides that unless a party in interest objects, "the property claimed as exempt . . . is exempt." 11 U.S.C. § 522(*l*). In any hearing on an objection to a debtor's claim of exemption, "the objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c); *In re Wilmoth*, 412 B.R. 791 (Bankr. E.D. Va. 2009). In this case, therefore, the Trustee has the burden of proving by a preponderance of the evidence that § 38.2-3122(B) is inapplicable to the Debtor's claimed exemption. *In re Scott*, 2012 WL 2576783, No. 11-37343-KRH at *1 (Bankr. E.D. Va. July 3, 2012).

5

The Trustee argues that the Debtor is not entitled to claim an exemption in the Life Insurance Proceeds under § 38.2-3122(B) because she was not a "person dependent on" her father at the time of his death. Section 38.2-3122(B) provides, in part:

> In no case whatsoever shall any protected insurance item be liable to execution, attachment, garnishment, or other legal process in favor of any creditor of:
> (1) The person whose life is insured by the related policy or contract;
> (2) The Person who can, may or will receive the benefit of that protected insurance item, provided that such a person is the insured or owner of the contract, deposit, indemnity, policy, or settlement, or the spouse or the intended spouse of, a dependent child of, or any other person dependent on, the insured or owner of the contract, deposit, indemnity, policy, or settlement;
> (3) The person who owns the related contract, deposit, or policy; or
> (4) The person who effected the related contract, deposit, or policy.

Va. Code Ann. § 38.2-3122(B). The Trustee does not dispute the fact that the Debtor was receiving money from her father; rather, he argues that the facts demonstrate the relationship was not one of dependency but instead that of an employer and employee. In support, he relies upon the fact that in July of 2017, the Debtor entered into an agreement with her father under which he would leave the assisted living facility and live with the Debtor, who would provide full-time care for him. In exchange for this care, her father paid the Debtor $1,500 per month plus payment of the Debtor's half of the rent and utilities for the home they had leased together. The Trustee points out that the Debtor, both prior to working for her father and thereafter, was capable

of employment and in fact had held other jobs. He further notes that the Debtor's father did not claim her as a dependent on his tax return nor did he include her in his will or as a beneficiary of his Individual Retirement Account with Wells Fargo Advisors.

The Debtor contends that the Life Insurance Proceeds should be exempt under Va. Code Ann. § 38.2-3122(B) because she was dependent on her father's financial help and does not have any other income or resources. The Debtor cites to *In re Dry*, 348 B.R. 475 (Bankr. C.D. Ill. 2006), which interpreted an Illinois statute similar to the statute at issue in this case[5], to support her position.

In *In re Dry*, the debtor and her partner, Mr. Kelm, had been living together in a house owned by the debtor. Although they maintained separate bank accounts, Kelm occasionally put money into the debtor's account. The debtor worked only two weeks over a period of two years and stayed home the rest of that time to take care of Kelm, who had cancer. Kelm paid the household expenses. The court found that the debtor and Kelm "were living as a family unit and, as such, they were mutually dependent." *Id*. at 479. It then held that for the purpose of the Illinois exemption statute, "a 'dependent' is 'an individual who is supported financially, either directly or indirectly by another, and who reasonably relies on such support.'" *Id*. at 478, citing *In re*

---

[5] The Illinois statute exempts, *inter alia*, "proceeds payable because of the death of the insured" that are payable to a "person dependent upon the insured" and "a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent." *See* 735 ILCS § 5/12-1001(f) and (h)(3).

7

*Rigdon*, 133 B.R. 460, 465 (Bankr. S.D. Ill. 1991). After applying this test to the facts in *Dry*, the court overruled the trustee's objection to the debtor's claim of exemption. *Id.* at 479.

As in *Dry*, the Debtor argues that she was supported financially by her father, either directly or indirectly, at the time of his death and that she reasonably relied on his support. She contends that the Court should apply the same test that the court applied in *Dry* to Virginia's statue and overrule the Trustee's objection.

Title 38.2 of the Virginia Code, which is comprised of chapters dealing with insurance, contains no definition of "dependent" applicable to § 38.2-3122(B). The Court is aware of no case law or legislative history addressing what the Virginia legislature specifically intended by extending the statute's protection to "any other person dependent on . . . the insured." Nevertheless, this case turns on how the phrase "dependent on" should be interpreted.

The Trustee contends that the Court should apply the statutory definition of "dependent" found in Title 34 of the Virginia Code entitled "Homestead and Other Exemptions." Title 34 contains Va. Code Ann. § 34-4, Virginia's homestead exemption. This statute establishes a monetary exemption limit that is increased by $500 for each dependent of the debtor. A provision included in the statute states that *"[f]or the purposes of this section*, 'dependent' means an individual who derives support primarily from the householder and who does not have assets sufficient to support himself . . . ."

8

Va. Code Ann § 34-4 (emphasis added).  This Court has interpreted the word "primarily" in that provision to require that:

> more of the dependent's support needs must be paid for or supplied (possibly in kind, such as a roof over the dependent's head or food on his or her table) by the party claiming the exemption than from any other source. . . .  [T]he court concludes that the dependency test is met if . . . the debtor is the primary provider of support.

*In re Ghanei*, No. 03-14557-SSM, 2005 Bankr. Lexis. 566 at *8 (Bankr. E.D. Va. Feb. 18, 2005).  There is nothing in §38.2-3122, nor anywhere else in Title 38.2 of the Virginia Code, indicating that the Legislature intended to incorporate § 34-4's definition of "dependent" into its insurance provisions.  In fact, by its own language, § 34-4's definition of "dependent" applies *only* to the homestead exemption.  Nevertheless, even if the Court were to accept the Trustee's contention that § 34-4's definition is applicable, the burden remains on the Trustee to prove by a preponderance of the evidence that the Debtor, at the time of her father's death, did not derive her support primarily from her father or that she had sufficient assets to support herself.[6]

Another Illinois bankruptcy court that had previously addressed the statute at issue in *Dry*, after lamenting the legislature's failure to define "dependent" for purposes of the statute, found that the debtors in its case qualified as "dependents" of their minor son where they claimed an exemption in the proceeds of a wrongful death action arising from his death.

---

[6] Section 152 of the Internal Revenue Code defines a dependent child or relative in specific terms.  26 U.S.C. § 152.  As this Court held in *In re Ghanei*, No. 03-14557-SSM, 2005 Bankr. Lexis. 566 at *7 (Bankr. E.D. Va. Feb. 18, 2005), the "technical requirements for dependency" found in the Internal Revenue Code are inapplicable here.

9

*In re Rigdon*, 133 B.R. 460. 465 (Bankr. S.D. Ill. 1991). The court held that in the absence of a statutory definition, it should apply the plain meaning of the word "dependent."

> Since neither Congress nor the Illinois legislature has deemed it necessary to define "dependent" for purposes of the issue before the Court, the Court concludes that the ordinary and common meaning of the word will suffice. It should be noted that the purpose of the exemption statutes is to give the debtor enough property and income to subsist and obtain a fresh start . . . . With this in mind, the Court holds that a "dependent," for purposes of § 12–1001 of the Illinois Code of Civil Procedure, is an individual who is supported financially, either directly or indirectly by another, and who reasonably relies on such support. This is a broad definition, and a factual finding of dependency will thus have to be made, after a hearing, on a case by case basis.

*Id*. at 465 (citations omitted).[7] The principals espoused by the court in *Rigdon*, that the purpose of an exemption statute is to give the debtor property and income to subsist and gain a fresh start, that in the absence of a statutory definition one should apply the plain meaning of a word, and that a factual finding of dependency is typically made on a case by case basis, apply in this case. And, again, whether the Court applies the narrower definition of "dependent" advocated by the Trustee or a broader definition such as that adopted in *Rigdon*, the burden of proof rests upon the Trustee.

This Court has recognized that "under the Bankruptcy Code and Virginia law, exemption statutes should be liberally construed in favor of the

---

[7] *See also Leslie Womack Real Estate, Inc. v. Dunbar (In re Dunbar)*, 99 B.R. 320, 324 (Bankr. M.D. La. 1989) (applying the plain meaning of "dependent" for purposes of completing a debtor's bankruptcy petition, a dependent is "a person who reasonably relies on the debtor for support financially"); *In re Tracy*, 66 B.R. 63, 66-67 (Bankr. D. Md. 1986) (in interpreting the term "dependent" in § 1325(b)(2)(A)'s calculation of disposable income, the court found that use of the I.R.S. formulas contained in 26 U.S.C. § 152 was improper, as those formulas were created "by Congress with defined policy in mind.").

10

debtor." *In re Bowman*, 582 B.R. at 904. It follows that most courts interpreting the term "dependent" have done so in a fashion that is consistent with the liberal construction to be accorded exemption statutes. *See, e.g., Meler v. U.S. Trustee (In re Meler)*, 295 B.R. 625, 630-631 (Bankr. D. Ariz. 2003).

A liberal construction of exemption statutes does not mean that an exemption may be created where none exists. The Fourth Circuit Court of Appeals has cautioned that:

> [l]ongstanding Virginia precedent establishes that exemption statutes are to be construed liberally. . . . However, "[t]he liberal construction required to be given to our constitutional and statutory provisions does not authorize the courts to reduce or enlarge the exemption, or to read into the exemption laws an exception not found there."

*Tignor v. Parkinson (In re Tignor),* 729 F.2d 977, 981 (4th Cir. 1984) (citations omitted). Applying a liberal interpretation of the word "dependent" in this case, however, is consistent with Virginia's exemption construction standard and does not run afoul of the Fourth Circuit's admonition to refrain from creating or enlarging an exemption that does not exist.

Having determined that there is no statutory definition of "dependent" applicable to § 38.2-3122, the Court must consider the common usage or plain language of the word. It has long been the case that "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 265 (4th Cir. 2004) (quoting *Hillman v. I.R.S.*, 263 F.3d

11

338, 342 (4th Cir. 2001). This "plain meaning rule" has its origins as far back as 1917.[8]

Black's Law Dictionary defines a "dependent" as "[s]omeone who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." Black's Law Dictionary (10th ed. 2014). The Merriam-Webster Online Dictionary defines "dependent" as "relying on another for support."[9] In the context of an individual in bankruptcy, the Court should bear in mind the salutary purposes of the state and federal exemption schemes, to give a debtor a fresh start with "enough property and income to subsist and obtain a fresh start." *In re Rigdon*, 133 B.R. at 465.[10]

The plain meaning of the word "dependent," as applied by the courts in *Dry* and *Rigdon*, should be assigned to the phrase "dependent on" set forth in

---

[8] "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms. . . . Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (citations omitted).

[9] www.merriam-webster.com.

[10] In *In re Foster*, 556 B.R. 233 (Bankr. E.D. Va. 2016), this Court stated that:

Exemption statutes, including those in Virginia, serve a number of important societal purposes by enabling debtors to protect certain property from the reach of creditors. One commentator has summarized the goals of the exemption statutes as follows:

The basic themes of exemption laws might be summarized as follows: The debtor must be protected against total poverty without undue prejudice towards claims of creditors through legislation which will not become obsolete quickly. Society has a clear interest in preventing any person from becoming a public charge. By permitting a debtor to retain sufficiency (sic) property to maintain a minimum standard of living, he retains his status as an independent economic unit thereby increasing the chances of rehabilitation....
A more prominent policy underlying the exemption laws is the desire to protect the debtor's dependents, ordinarily the members of his family, from undue hardships.

Joseph E. Ulrich, *Virginia's Exemption Statutes–The Need for Reform and a Proposed Revision*, 37 Wash. & Lee L. Rev. 127, 129–30 (1980). 556 B.R. at 241.

12

Va. Code Ann. § 38.2-3122(B) rather than definition of the word "dependent" contained in Va. Code Ann. § 34-4. Therefore, a finding that the Debtor was supported by her father, either directly or indirectly, and reasonably relied on his support, will result in the allowance of her exemption in the Life Insurance Proceeds.

In this case, it is significant that a parent and child relationship existed between the Debtor and her father rather than solely as employer and employee.[11] Though the Debtor was no longer a minor, she lived with her father and relied upon him as the sole source of all of her financial needs, directly and indirectly, before his death. Similar to the facts in *In re Dry*, the Debtor and her father were living as a family unit and were mutually dependent.

The Debtor had been receiving financial support from her father since her divorce in 2009 including gifts of $13,000 in both 2016 and 2017, amounts that exceeded the Debtor's earned income for both years. When her father passed away in August of 2017, the Debtor's source of income and sustenance ceased. For the remainder of 2017, she was only able to earn a total of $486. The Life Insurance Proceeds in the amount of $15,261.58 approximates the amount of the annual gifts the Debtor had been receiving from her father but would no longer receive due to his death. The evidence supports a finding

---

[11] At least one court has observed that "[t]he relationship between a child and parent is unlike that between a husband and wife, where a mutual dependency is presumed and the exemption for life insurance proceeds may be granted without an additional showing of dependency." *In re Maclaren*, 227 B.R. 810, 813 (Bankr. S.D. Ill. 1998).

13

that the Debtor reasonably relied upon her father's financial support and that the Life Insurance Proceeds would be the primary source of subsistence available to the Debtor after his death as well as her only significant means to a fresh start.

Even under the definition of "dependent" set forth in Va. Code Ann. § 34-4, the definition he advocates is applicable, the Trustee has failed to prove by a preponderance of the evidence that the Debtor did not derive her support primarily from her father or that she has assets sufficient to support herself. The Trustee failed to present evidence of any meaningful future source of income for the Debtor and offered no evidence of the Debtor's assets other than to demonstrate that she was not a beneficiary under her father's will and IRA.[12]

The cornerstone of the Trustee's argument is that because the Debtor and her father created an "employer-employee" component to their shared dependency for the two months preceding her father's death, the Debtor could not be considered "dependent on" her father. Ordinarily, an employee who is, in a sense, dependent on his or her employer for income will not satisfy the criteria necessary to claim a dependency exemption under § 38.2-3122(B). However, the Court will not adopt a *per se* rule that prohibits a finding of

---

[12] The Trustee has not argued nor offered evidence that the Debtor, absent the Life Insurance Proceeds, had sufficient assets with which to support herself after her father's death. The Court takes judicial notice that the Debtor's schedules list minimal personal assets, with only $735 in three bank accounts and $552 in a retirement account. The Debtor also listed an anticipated $3959 federal tax refund that had not yet been received. As to why her father did not include the Debtor in his will or name her as a beneficiary under his IRA, the Court has no evidence regarding his intent in so doing and will not engage in speculation.

dependency whenever there is any evidence of an employer-employee relationship. Instead, the Court will examine the facts in each case. In this case, the existence of the employer-employee arrangement between the Debtor and her father is insufficient to carry the Trustee's burden of proof.

## Conclusion

The Trustee has failed to prove by a preponderance of the evidence that the Debtor was not dependent on her father at the time of his death and therefore ineligible to exempt the Life Insurance Proceeds pursuant to Va. Code Ann. § 38.2-3122(B). Therefore, the Court finds that under the facts of this case the Debtor is entitled to claim the exemption and the Objection will be overruled.

A separate order will be entered consistent with this Memorandum Opinion.

Signed: July 31, 2018

/s/ Keith L. Phillips
United States Bankruptcy Judge

Copies:

Leslie J. Naranjo
1723 Wilmington Avenue
Richmond, VA 23227

Entered on Docket: July 31, 2018

Bruce W. White
8550 Mayland Drive Suite 206
Richmond, VA 23294

Roy M. Terry, Jr.
Sands Anderson PC
P.O. Box 2188
Richmond, VA 23218-2188

Christian K. Vogel
Vogel & Cromwell, LLC
6802 Paragon Place Suite 410
Richmond, VA 23230